UNITED STATES DISTRCT COURT
DISTRICT OF MASSACHUSETTS

MARK J. LANCE

       Plaintiff

v.

PNC BANK, N.A

       Defendant

**COMPLAINT
AND JURY DEMAND**

### NATURE OF THE CASE

1.      Plaintiff Mark J. Lance filed for Chapter 7 bankruptcy and discharged his mortgage loan, serviced by defendant PNC Bank, N.A. Although Lance had no further personal liability for the debt, PNC nevertheless reported the account on his credit report as overdue, in violation of the bankruptcy discharge injunction under 11 U.S.C. § 524. This also violated the Massachusetts credit reporting statute, G.L. c. 93, § 54A, which prohibits furnishers of consumer credit information from providing an inaccurate account status. PNC's wrongful reporting cost Lance a substantial employment opportunity.

### JURISDICTION AND VENUE

2.      The Court has jurisdiction over the Lance's claims based on diversity jurisdiction and the amount in controversy exceeds $75,000 pursuant to 28 U.S.C. § 1332.

3.      Venue is proper in the District of Massachusetts because the Defendant transacts business here and a substantial portion of the acts giving rise to this action occurred here, pursuant to 28 U.S.C. § 1391(b).

**PARTIES**

4.     Mark Lance ("Plaintiff") is a natural person residing at 1101 Princeton Way, Westford, MA 01866.

5.     PNC Bank, N.A. ("PNC" or "Defendant") is a nationally charted bank with principal offices located in Wilmington, Delaware. PNC regularly does business in Massachusetts. PNC is in the business of servicing mortgage loans.

**BACKGROUND**

6.     In 2008, Lance obtained a mortgage and note in the amount of $474,231.00 from National City Bank on a home located at 165 Playstead Rd., Medford, MA 02155.

7.     PNC acquired National City Bank in 2008, and began servicing Lance's loan.

8.     In August 2010, Lance filed for chapter 7 bankruptcy, Case No. 10-19540. **(Exhibit A.)**

9.     On December 1, 2010, Lance received a discharge order in his case. **(Exhibit B.)**

10.     Included in his discharge order was his mortgage in favor of PNC.

11.     In May 2013, PNC began foreclosure proceedings on Lance's home.

12.     Lance and PNC reached an agreement on January 31, 2014 to permanently modify his loan. At no point did Lance reaffirm his mortgage with PNC.

13.     After the modification, in July, 2014, Lance applied for employment with Mountain One Bank ("Mountain One").

14.     On July 25, 2014, Mountain One offered Lance a position as Vice President Regional Sales Manager & Recruiter. **(Exhibit C.)**

15.     The offer contained an annual compensation based on salary and commission. The annual salary was $60,000 and additional compensation would be based on performance and commission incentives.

16.     The offer from Mountain One was also contingent upon a background check and a credit check.

17.     On or about July 28, 2014 Lance accepted and authorized Mountain One to check his credit report.

18.     Mountain One obtained his credit report and included in the report was a tradeline from PNC reporting that foreclosure proceedings had started as of May 2013. For the months of May, June, July, August, September, October, November, December, and January, PNC reported that the account was in foreclosure. The report further stated Lance had a past due balance of $99,726. **(Exhibit D.)**

19.     Lance was contacted by a Human Resource representative from Mountain One expressing concern about the foreclosure tradeline reported by PNC. Lance explained that the debt and mortgage had been discharged and was being improperly reported.

20.     On or about July 29, 2014, Lance filed a dispute with Experian, disputing the information furnished by PNC relating to the foreclosure status.

21.     Despite his explanation and dispute, on or about July 31, 2014 Mountain One declined to hire Lance based on PNC's trade line.

22.     The next day Lance informed PNC that its improper reporting cost him a job opportunity and requested PNC properly report the account. **(Exhibit E.)**

23.     Despite acknowledging the dispute, PNC still reported that "Foreclosure proceeding started," and that the account is 180 days past due.

24.     As a result of PNC's actions Lance lost a substantial employment opportunity, suffered damage to his credit, and caused Lance unnecessary mental anguish and emotional distress.

## COUNT I.
## Violation of Bankruptcy Discharge Injunction, 11 U.S.C. § 524

25.     The preceding paragraphs are incorporated by reference.

26.     By discharging the mortgage in his chapter seven bankruptcy, Lance was no longer personally liable for the debt.

27.     The discharge order operates as "an injunction against the commencement or continuation of an action, the employment of process, or an act, to collect, recover or offset any such debt as a personal liability of the debtor." 11 U.S.C. § 524(a)(2).

28.     Credit reporting has repeatedly been held as an attempt to collect a debt. *See Rivera v. Bank One*, 145 F.R.D. 614, 623 (D. P.R. 1993) (a creditor's report of a debt to a consumer reporting agency is a "powerful tool, designed in part to wrench compliance with payment terms"); *Brady v. Credit Recovery Co.*, 160 F.3d 64 (1st Cir. 1998) (debt collector liable for credit reporting on consumer account); *Smith v. Encore Capital Group Inc.*, 966 F. Supp. 2d 817 (E.D. Wis. 2013) (denying motion to dismiss for debt collector's inaccurate reporting on credit report).

29.    PNC violated the discharge injunction by reporting an account balance on Lance's credit report.

30.    PNC continued to report that the discharged debt is 180 days past due, has a past-due balance of $99,726 and has an account balance of $465,430.

31.    By reporting a balance owed, PNC was attempting to collect on the debt, in violation of 11 U.S.C. § 524.

## COUNT II.
## Massachusetts Credit Reporting Act, G.L. c. 93, § 54A

32.    The preceding paragraphs are incorporated by reference.

33.    PNC furnished information to Experian, a consumer reporting agency.

34.    As a furnisher of information, PNC may not provide information to a consumer reporting agency if it knows or has reasonable cause to believe such information is not accurate or complete.

35.    Prior to August 7, 2014, PNC was reporting Lance's discharged mortgage as 180 days past due.

36.    Prior to August 7, 2014, PNC was reporting Lance's discharged mortgage was in foreclosure.

37.    Prior to August 7, 2014, PNC was reporting Lance's discharged mortgage had a past due balance of $99,726.

38.    Prior to August 7, 2014, PNC reported Lance's discharged mortgage had an account balance of $465,430.

39.    On or about August 7, 2014, PNC received a dispute letter from Lance that it was improperly reporting the discharged mortgage.

40.    On or about August 13, 2014, Lance received the results of his dispute from Experian with a current credit report. (**Exhibit F.)**

41.    Despite his dispute, PNC continued to report that foreclosure proceedings had started.

42.    On or about September 9, 2014 PNC acknowledged the dispute received on August 7, 2014, and stated that it instructed the credit bureaus to report the loan as discharged in bankruptcy. (**Exhibit G.)**

43.    PNC failed to properly report Lance's discharged mortgage, and despite receiving Lance's dispute on August 7, 2014, failed to maintain reasonable procedures to comply with c. 93, § 54A(g), as they continued to furnish inaccurate information about Lance's discharged mortgage after receiving the dispute.

## COUNT III.
## Massachusetts Consumer Protection Act, G.L. c. 93A

44.    The preceding paragraphs are incorporated by reference.

45.    Lance is not entitled to make a claim under G.L. c. 93A, § 11.

46.    PNC is engaged in trade or commerce in Massachusetts by servicing residential mortgages, including Lance's discharged mortgage.

47.    PNC has engaged in unfair and deceptive acts and practices with respect to Lance's discharged mortgage.

48.    Lance sent a demand letter for an offer of settlement to PNC on November 24, 2014. (**Exhibit H.)**

49.    PNC received the demand letter on December 1, 2014.

50.     On December 31, 2014, PNC through counsel, requested a two-week extension to respond to Lance's demand letter. The request was granted.

51.     To date, PNC has failed or refused to respond to Lance's settlement demand letter.

52.     PNC's actions have cost Lance a job opportunity with Mountain One Bank, an annual salary, damaged his credit, caused Lance unnecessary pain and suffering and mental anguish, and incur legal costs and fees in his attempt to have PNC properly report his credit.

## REQUEST FOR RELIEF

WHEREFORE, plaintiff Mark J. Lance requests the following relief:

a)   Judgment in his favor and against defendant on all counts;

b)   Actual and compensatory damages;

c)   Punitive damages;

d)   Costs, interest, and attorney fees; and

e)   Any other relief available to him at law or in equity.

## JURY DEMAND

Plaintiff Mark J. Lance hereby requests a jury on all issues so triable.

Respectfully submitted,

Plaintiff,
Mark J. Lance,
By counsel,

/s/ *Josef C. Culik*
Josef C. Culik (BBO #672665)
CULIK LAW PC
18 Commerce Way, Suite 2850
Woburn, Massachusetts 01801
(617) 830-1795
(617) 830-1576 Fax
jculik@culiklaw.com

February 3, 2015