UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

_____
                                                    )
MARK J. LANCE,                                      )
                                                    )
            Plaintiff,                              )
                                                    )        Civil Action No.
      v.                                            )        15-10250-FDS
                                                    )
PNC BANK, N.A.,                                     )
                                                    )
            Defendant.                              )
_____)

MEMORANDUM AND ORDER ON
DEFENDANT'S MOTION TO DISMISS

SAYLOR, J.

       This is an action arising out of allegedly improper reporting of the status of a residential

mortgage loan to a credit reporting company.  Plaintiff Mark J. Lance has brought suit again

defendant PNC Bank, N.A., for violation of a bankruptcy discharge injunction under 11 U.S.C. §

524; violation of the Massachusetts Credit Reporting Act under Mass. Gen. Laws ch. 93, § 54A;

and violation of Mass. Gen. Laws Ch. 93A.  The complaint alleges that PNC improperly reported

on Lance's foreclosure and outstanding debt following bankruptcy, and that the improper

reporting cost him a job offer.

       On April 8, 2015, PNC moved to dismiss the action for failure to state a claim.  For the

following reasons, the motion to dismiss will be granted.

I.     **Background**

       A.     **Factual Background**

       In 2008, Mark Lance obtained a mortgage and note for his home in the amount of

$474,231 from National City Bank.  (Compl. ¶ 6).  PNC Bank, N.A., acquired National City Bank in 2008 and became the successor-in-interest to Lance's loan.  (*Id.* ¶ 7).  In August 2010, Lance filed for Chapter 7 bankruptcy.  (*Id.* ¶ 8).  On December 1, 2010, he received a discharge order in his bankruptcy case.  (*Id.* ¶ 9).

In May 2013, PNC began foreclosure proceedings on Lance's home.  (*Id.* ¶ 11).  On January 31, 2014, Lance and PNC agreed to permanent modify his loan.  (*Id.* ¶ 12).  According to the complaint, "[a]t no point did Lance reaffirm his mortgage with PNC."  (*Id.*).

On July 25, 2014, Lance was offered the position of Vice President Regional Sales Manager and Recruiter at Mountain One Bank.  (*Id.* ¶ 14).  The offer, however, was contingent on credit and background checks.  (*Id.* ¶ 16).  When Mountain One obtained Lance's credit report, it found that PNC had reported that the account had been in foreclosure from May 2013 through January 2014 and that Lance had a past due balance of $99,726.  (*Id.* ¶ 18).

A representative from Mountain Bank informed Lance that it found this information concerning, and Lance explained that the debt and mortgage had been discharged and was being improperly reported.  (*Id.* ¶ 19).  On July 29, 2014, Lance filed notified the credit reporting agency Experian that he disputed the information provided by PNC.  (*Id.* ¶ 20).  Nevertheless, two days later, on July 31, Mountain One informed Lance that it had declined to hire him based on the foreclosure and outstanding debt on his credit report.  (*Id.* ¶ 21).

On August 7, 2014, PNC received a letter from Lance, informing it that its improper reporting cost him a job opportunity.  (*Id.* ¶¶ 22, 39).  He requested that PNC properly report the account.  (*Id.*).  On September 9, 2014, PNC sent Lance a letter in which it (1) acknowledged receipt of his letter, (2) stated that its records indicated that his account had been discharged in bankruptcy, (3) informed him that it was not attempting to collect against him personally, and (4)

notified him that on September 4, 2014, it had instructed credit bureaus to report the loan as discharged in Chapter 7 bankruptcy and to show the loan as current as of the bankruptcy filing date of August 31, 2010.  (Compl. Ex. G).

### B.    Procedural Background

On February 3, 2015, Lance filed the complaint in this action.  It alleges claims for (1) violation of the bankruptcy discharge injunction under 11 U.S.C. § 524; (2) violation of the Massachusetts Credit Reporting Act under Mass. Gen. Laws ch. 93A, § 54A; and (3) violation of Mass. Gen. Laws ch. 93A.  PNC has moved to dismiss the complaint under Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief can be granted.

## II.    Legal Standard

On a motion to dismiss, the Court "must assume the truth of all well-plead[ed] facts and give . . . plaintiff the benefit of all reasonable inferences therefrom."  *Ruiz v. Bally Total Fitness Holding Corp.*, 496 F.3d 1, 5 (1st Cir. 2007) (citing *Rogan v. Menino*, 175 F.3d 75, 77 (1st Cir. 1999)).  To survive a motion to dismiss, the complaint must state a claim that is plausible on its face.  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  That is, "[f]actual allegations must be enough to raise a right to relief above the speculative level, . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact)."  *Id.* at 555 (citations omitted).  "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 556).  Dismissal is appropriate if the facts as alleged do not "possess enough heft to show that plaintiff is entitled to relief."  *Ruiz Rivera v. Pfizer Pharm., LLC*, 521 F.3d 76, 84 (1st Cir. 2008) (alterations omitted) (internal quotation marks omitted).

III.   <u>**Analysis**</u>

A.      <u>**Count One: Bankruptcy Discharge Injunction, 11 U.S.C. § 524**</u>

Under the bankruptcy code, a discharge "operates as an injunction against the commencement or continuation of an action, the employment of process, or an act, to collect, recover or offset any such debt as a personal liability of the debtor . . . ."  11 U.S.C. § 524(a). The complaint alleges that PNC has violated that provision by reporting that Lance had debt that was 180 days past due, had a past-due balance of $99,726, and had an account balance of $465,430.  (Compl. ¶¶ 29-30).  It alleges that "[b]y reporting a balance owed, PNC was attempting to collect on the debt in violation of 11 U.S.C. § 524."  (*Id.* ¶ 31).

PNC contends that the claim should be dismissed because § 524(a) contains no private right of action.  However, 11 U.S.C. § 105(a) of the Bankruptcy Code empowers bankruptcy courts to enforce other sections of the Code and, as a result, "a bankruptcy court is authorized to invoke § 105 to enforce the discharge injunction by § 524 and order damages . . . ."  *Bessette v. Avco Fin. Servs., Inc.*, 230 F.3d 439, 446 (1st Cir. 2000).[1]  Moreover, the First Circuit has declined to follow those courts that require litigants to bring such proceedings before the bankruptcy court, finding that a district court may invoke § 105 to enforce provisions of the bankruptcy code.  *Id.*; *see Vil v. Poteau*, 2013 WL 3878741, at *10 (D. Mass. July 26, 2013).

PNC also contends that the claim should be dismissed because it did not violate the bankruptcy court's discharge order.  The complaint alleges that PNC's act of reporting his discharged mortgage constitutes an effort to collect a debt.  To violate § 524, a creditor must "act[] in a way that improperly coerces or harasses the debtor."  *In re Lumb*, 401 B.R. 1, 6 (1st

---

[1] Section 105(a) provides:  "The court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title."  11 U.S.C. § 105(a).

Cir. BAP 2009). The standard is whether the creditor's actions are objectively coercive, and not whether the creditor acted in bad faith. *In re Pratt*, 462 F.3d 14, 18 (1st Cir. 2006).

PNC contends that it did not engage in misreporting because its right to enforce the mortgage was unaffected by Lance's bankruptcy discharge. It is well-established that a lien on real property, including all amounts due thereunder, passes through a bankruptcy unaffected. *Dewsnup v. Timm*, 502 U.S. 410, 418 (1992); *see also In re Keeler*, 257 B.R. 442, 446 (Bankr. D. Md. 2001) ("Unless otherwise addressed by orders entered in the bankruptcy case, pre-petition liens held by creditors 'ride through' the bankruptcy unscathed."). The bankruptcy discharge order specifically noted that "a creditor may have the right to enforce a valid lien, such as a mortgage or security interest, against the debtor's property after the bankruptcy, if that lien was not avoided or eliminated in the bankruptcy case." (Compl. Ex. B). The discharge in the bankruptcy case thus did not terminate Lance's credit relationship with PNC. *See Germain v. Bank of Am., N.A.*, 2014 WL 5802018, at *7 (W.D. Wis. Nov. 7, 2014) ("Because [the discharged mortgagor] still held an obligation to [the mortgagee] from the credit that [the mortgagee] had extended to him, I conclude that a credit relationship and 'account' existed between them."). In *Germain*, the court observed:

> After a chapter 7 discharge, the consumer is not personally liable for the loan, but he or she still "owes" the lender in the form of the property (the collateral). In other words, the consumer must either make new arrangements with the lender to keep the property, return it to the lender[,] or wait for it to be foreclosed upon. Thus, until the borrower fulfills his debt, he has a credit relationship in the form of an obligation to the lender, even after discharge.

*Id.* at *5 (citations omitted). Here, in January 2014, more than seven months after Lance obtained the discharge, he agreed to a loan modification with PNC. That act alone shows that Lance continued to have a credit relationship with PNC. As a result, PNC "was under no

obligation under the Bankruptcy Code to change the way it reported the status of the loan." *In re Vogt*, 257 B.R. 65, 71 (Bankr. D. Colo. 2000).

Furthermore, and in any event, even assuming that Lance had no credit relationship with PNC after the bankruptcy discharge, several courts have concluded that, standing alone, the act of reporting a discharged debt is not a violation of § 524(a). *See In re Mahoney*, 368 B.R. 579, 589 (Bankr. W.D. Tex. 2007) ("[R]eporting of a debt to a credit reporting agency—without any evidence of harassment, coercion, or some other linkage to show that the act is one likely to be effective as a debt collection device—fails to qualify on its own as an 'act' that violates section 524."); *In re Irby*, 337 B.R. 293, 296 (Bankr. N.D. Ohio 2005) ("[T]he Court cannot conclude[] that [] the sole act of reporting a debt . . . violates the discharge injunction."); *In re Vogt*, 257 B.R. at 71 ("False reporting, if not done to extract payment of the debt, is simply not an act proscribed by the Code."). In *Irby*, the court explained that although a discharge eliminates a debtor's personal liability for the debt, it does not eliminate the debt itself. *In re Irby*, 337 B.R. at 295 (citing *Johnson v. Home State Bank*, 501 U.S. 78, 83 (1991)). As a result, the court declined to find that reporting the debt was a violation of the bankruptcy code because "[a]ll that is being reported is the truth." *Id.*

Courts that have found violations of § 524(a) for false reporting have done so where it is coupled with other coercive behavior. For example, in *In re Torres*, 367 B.R. 478 (Bankr. S.D.N.Y. 2007), the Southern District of New York denied a motion to dismiss under § 524(a) where multiple consumers alleged that a creditor bank continued to report on their discharged debts and refused to update their credit reports despite repeated protests. *Id.* at 484. Similarly, in *In re Zine*, 521 B.R. 31 (Bankr. D. Mass. 2014), the servicer had begun to report on a debt anew long after it had been discharged, and the debtor had received calls and letters regarding the debt.

*Id.* at 40 (explaining that these "additional contacts with Debtor remove all doubt" that the creditor violated § 524(a)).  Here, by contrast, the complaint does not allege that PNC ever contacted Lance regarding the discharged debt, nor does it allege the type of repeated behavior evidence in *In re Torres*.  Under the circumstances, PNC's single instance of failing to update Lance's credit report is not so objectively coercive as to warrant relief under § 524(a).  Therefore, Count One will be dismissed.

### B.    Counts Two and Three

Counts Two and Three allege violations of the Massachusetts Credit Reporting Act, Mass. Gen. Laws ch. 93, § 54A, and the Massachusetts Consumer Protection Act, Mass. Gen. Laws ch. 93A.  PNC contends that these claims are preempted under the Fair Credit Reporting Act ("FCRA"), which provides that "[n]o requirement or prohibition may be imposed under the laws of any State . . . relating to the responsibilities of persons who furnish information to consumer reporting agencies . . . ."  15 U.S.C. § 1681t(b)(1)(F).

### 1.    Count Two:  Massachusetts Credit Reporting Act

Chapter 93A, § 54A provides that

> [e]very person who furnishes information to a consumer reporting agency shall follow reasonable procedures to ensure that the information reported to a consumer reporting agency is accurate and complete.  No person may provide information to a consumer reporting agency if such person knows or has reasonable cause to believe such information is not accurate or complete.

According to Lance, PNC violated that statute when it failed to report his discharged mortgage properly, and continued to furnish inaccurate information about the discharged mortgage after receiving his dispute letter.

At first glance, Mass. Gen. Laws ch. 93, § 54A would appear to fall directly within the FRCA's preemptive language:  it is a requirement imposed by state law that clearly relates to the

responsibilities of a furnisher of information.  15 U.S.C. § 1681t(b)(1)(F).  However, the FRCA

also provides that § 1681t(b)(1)(F) "shall not apply—(i) with respect to section 54A(a) of chapter

93 of the Massachusetts Annotated Laws . . . ."  15 U.S.C. § 1681t(b)(1)(F).  This language

suggests that plaintiff's § 54A claim is *not* preempted.

There is, however, another wrinkle in the analysis.  While the FCRA expressly exempts

§ 54A(a) from its preemptive reach, it includes no such exemption for § 54A(g)—the provision

that creates a private cause of action for violations of § 54A(a).[2]  In the Court's view, the

absence of express language exempting § 54A(g) from the FCRA's preemption provision is fatal.

As Chief Judge Saris of this court has noted,

> [t]he FCRA . . . did not exempt from its provisions Mass. Gen. Laws ch. 93, §
> 54A(g), which creates a cause of action for providing false information. . . .
> Where, as here, the FCRA does not exempt the state law provision expressly
> authorizing a private cause of action, such private causes of action remain
> preempted.

*Gibbs v. SLM Corp.*, 336 F. Supp. 2d 1, 13 (D. Mass. 2004); *see also Leet v. Cellco Partnership*,

480 F. Supp. 2d 422 (D. Mass. 2007); *Islam v. Option One Mortg.*, 432 F. Supp. 2d 181, 188-89

(D. Mass. 2006).  *But see Catanzaro v. Experian Info. Sols., Inc.*, 671 F. Supp. 2d 256, 261 (D.

Mass. 2009).[3]  Accordingly, Lance's claim under Mass. Gen. Laws ch. 93, § 54A is preempted.

Count Two of the complaint will be dismissed.

---

[2] Mass. Gen. Laws ch. 93, § 54A(g) states that

> [a] person who furnishes information to a consumer reporting agency shall be liable for failure to
> comply with the provisions of this section, unless the person so furnishing the information
> establishes by a preponderance of the evidence that, at the time of the failure to comply with this
> section, such person maintained reasonable procedures to comply with such provisions.

[3] The Court notes that this result presents a potential anomaly.  As Judge Young noted in *Islam*, there does
not appear to be statutory "authorization for the Massachusetts Attorney General or other state official to enforce
Section 54A(a), and there appears to be no reported cases involving official enforcement of Section 54A."  432 F.
Supp. 2d at 189.  It is therefore possible that Congress has excepted § 54A(a) from preemption without providing for
a mechanism by which it can be enforced.  However, in *Islam*, 432 F. Supp. 2d at 189, although Judge Young stated
that he could "find no authorization for the Massachusetts Attorney General or other state official to enforce Section
54A(a)," based on the representation of both parties at oral argument that the Attorney General indeed could enforce

2.      **Count Three:  Chapter 93A**

Count Three alleges a violation of Chapter 93A.  "The purpose of [Mass. Gen. Laws ch.] 93A is to improve the commercial relationship between consumers and business persons and to encourage more equitable behavior in the marketplace."  *Poznik v. Massachusetts Med. Prof'l Ins. Ass'n*, 417 Mass. 48, 53 (1994).  A practice or act is unfair under Chapter 93A "if it is (1) within the penumbra of a common law, statutory, or other established concept of unfairness; (2) immoral, unethical, oppressive, or unscrupulous; or (3) causes substantial injury to competitors or other business people."  *Morrison v. Toys "R" Us, Inc.*, 441 Mass. 451, 457 (2004).

PNC contends that the Chapter 93A claim is preempted because the claim is based on its reporting of plaintiff's consumer credit information.  Lance contends that the Chapter 93A claim survives preemption because it alleges the existence of unfair practices independent from the subject matter of § 1681s-2.  Specifically, he contends that the Chapter 93A claim is based on PNC's unlawful debt collection by means of credit reporting, rather than the inaccurate credit reporting itself.

That argument, however, cannot withstand analysis.  The complaint alleges that PNC engaged in debt collection through its reporting.  The conduct at issue is the same, and PNC's

---

Chapter 54A, "in conjunction with the legislative history and numerous court decisions contemplating only official enforcement, as well as the First Circuit's affirmance of *Gibbs*," he concluded that Section 54A is preempted by the FCRA insofar as it provides for a private right of action.  *Id.*

In *Catanzaro*, 671 F. Supp. 2d 256, Judge Gorton came to the opposite conclusion.  Specifically, he found that "because the parties . . . made no . . . representation" that "the Attorney General possessed the necessary authority to enforce § 54A[,] . . . *Islam* is not controlling."  *Id.* at 261.  As a result, he concluded that "[a]bsent any indication that the Massachusetts Attorney General or any other state official possesses the requisite authority to enforce § 54A, the Court declines to foreclose the possibility of private enforcement of the statute."  *Id.*

Recently, in *Kuppserstein v. Bank of America, N.A.*, 2015 WL 4601704 (D. Mass. July 31, 2015), Judge O'Toole found that a claim under § 54A is preempted under the Fair Credit Reporting Act.  In that opinion, he concluded that "it is plain that the Attorney General may take action, including civil suit, to enforce § 54A(a)."  *Id.* at *3 (citing Mass. Gen. Laws ch. 12, § 10; Mass. Gen. Laws ch. 93, § 68; Mass Gen. Laws ch. 93A, § 4).  As a result, he agreed "with those judges who have concluded that Congress exempted subsection (a) of § 54A, but not subsection (g)."  *Id.*

debt collection practices—insofar as they are coextensive with its reporting on a discharged debt—are exactly the type of conduct that Congress intended to regulate under the FCRA. Accordingly, Lance's claim under Mass. Gen. Laws ch. 93A is preempted.  Count Three of the complaint will be dismissed.

**IV.**     <u>**Conclusion**</u>

For the foregoing reasons, the motion to dismiss by PNC Bank is GRANTED, and the action is DISMISSED.

**So Ordered.**

/s/ F. Dennis Saylor
F. Dennis Saylor IV
United States District Judge

Dated: September 15, 2015